IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Burr & Associates, LLC, ) | Case No. 3:25-cv-01381-JDA |
| Plaintiff, ) | |
| v. ) | **OPINION AND ORDER** |
| John Doe 1, John Doe 2, ) | |
| John Doe 3, John Doe 4, ) | |
| Defendants. ) | |

This matter is before the Court on motions by Burr & Associates, LLC ("Burr") for an ex parte temporary restraining order ("TRO") and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure (the "TRO Motion") and for leave to conduct pre-service discovery (the "Discovery Motion"). [Docs. 4; 5.]

## BACKGROUND[1]

Burr is a law firm operating in South Carolina that has a business banking relationship with Truist Bank ("Truist") and maintains an account at Truist that it utilizes in connection with its law practice (the "Burr Account"). [Doc. 1 ¶¶ 1, 16–17.] In September and October 2024, Burr was assisting as the buyer's counsel with closing a transaction for the purchase of real estate located in Chapin, South Carolina (the "Real Estate Closing"). [*Id*. ¶ 18.] Sometime prior to the Real Estate Closing, which occurred on October 31, 2024, Defendants and their co-conspirators hacked into communications among the parties to the Real Estate Closing through unknown means, posed as parties related to the Real Estate Closing, and transmitted to Burr false wire instructions (the

---

[1] The Background summary is derived from the Complaint filed in this matter. [Doc. 1.]

"Fraudulent Wire Instructions") directing that Burr wire a mortgage paydown to a particular account ("the Truist 1857 Account"). [*Id*. ¶¶ 18–19.] In reliance on the Fraudulent Wire Instructions, Burr wired the sum of $456,862.96 (the "Wired Funds") from the Burr Account to the Truist 1857 Account (the "Wire Transfer"). [*Id*. ¶ 20.]

The owners of the Truist 1857 Account and subsequent accounts to which the Wired Funds may have been transferred (the "Recipient Accounts") are unknown, but upon information and belief, they are persons operating or recruited by a fraudulent enterprise for the purpose of moving funds beyond the reach of Burr and of court process. [*Id*. ¶ 23.] Because of the Fraudulent Wire Instructions, the Wired Funds were transferred from the Burr Account into the Truist 1857 Account and the Recipient Accounts to persons not affiliated with Burr or the Real Estate Closing. [*Id*. ¶ 25.]

Considering the above alleged scheme by Defendants, Burr filed this action on March 6, 2025, asserting causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; for money had and received; fraud; civil conspiracy; and unjust enrichment/constructive trust. [*Id*. ¶¶ 31–58.] Burr seeks compensatory, nominal, treble, general, and punitive damages, and an award of costs and attorneys' fees. [*Id*. ¶¶ 21, 62–63; *id.* at 13.] Burr also seeks injunctive relief and disgorgement of funds wrongfully taken, received, and misappropriated by Defendants.[2] [*Id*. ¶¶ 59–61; *id.* at 13.]

On March 7, 2025, Burr filed the TRO Motion and the Discovery Motion. [Docs. 4; 5.] In the TRO Motion, Burr requests a TRO freezing the Truist 1857 Account and subsequent Recipient Accounts and all of their proceeds, wherever located, since

---

[2] Truist was able to recover $140,137.24 of the Wired Funds. [Doc. 1 ¶ 21.]

October 31, 2024, up to the amount of $316,725.68 on a temporary and preliminary, then permanent basis pursuant to Rule 65.  [Doc. 4 at 8.]  It also requests that the Court set a preliminary injunction hearing within 14 days of the entry of the TRO, enter a preliminary injunction through final judgment of this case or until further order of the Court, and grant such other and further relief as the Court deems just and proper.  [*Id.* at 10–11.]

In the Discovery Motion, Burr "requests leave to conduct discovery to ascertain the identity of Defendants, and [discovery concerning] the disposition of [Burr's] funds which were transferred to the Truist 1857 Account and subsequent Recipient Accounts under false pretenses, including issuance of subpoenas *duces tecum* and subpoenas for depositions."  [Doc. 5 at 3.]

## DISCUSSION

**The TRO Motion**

### *Requirements for an Ex Parte TRO*

Under Rule 65(b), the court

> may issue a temporary restraining order *without written or oral notice to the adverse party or its attorney* only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P 65(b)(1) (emphasis added).

### *Requirements for a Preliminary Injunction*

A preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it."  *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013)

3

(internal quotation marks omitted). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (internal quotation marks omitted). Because granting a motion for preliminary injunctive relief "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way[,] [t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted). Accordingly, the decision whether to grant a preliminary injunction is committed to the equitable discretion of the district court. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010); *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007).

The current standard for granting preliminary injunctive relief is set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Under *Winter*, to obtain a preliminary injunction, the moving party must demonstrate:

1) he is likely to succeed on the merits,

2) he will suffer irreparable harm if the preliminary injunction is not granted,

3) the balance of equities favors him, and

4) the injunction is in the public interest.

555 U.S. at 20; *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). Moreover, *Winter* requires that each preliminary injunction factor "be satisfied as articulated." *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013) (internal quotation marks omitted).

*Analysis*

In the TRO Motion, Burr argues that, in accordance with the *Winter* factors, its claims have a strong likelihood of success on the merits under federal law and South Carolina state law. [Doc. 4 at 3–5.] Burr also argues that it is likely to suffer immediate and irreparable injury absent an injunction. [*Id*. at 5–6.] Burr contends that, "[a]bsent an immediate injunction, the funds that are the subject of the fraudulent transaction will likely go beyond the reach of Court process, if they have not already" and that absent a preliminary injunction, Defendants "will complete their plan to abscond with Plaintiff's funds and will further dissipate the funds." [*Id*. at 6.] Burr also contends that ex parte relief is necessary and that, because of the passage of time and uncertainty as to what remains of the fraudulently transferred funds, that bond should be waived at this time. [*Id*. at 10.]

With this motion, the Court's analysis begins and ends with irreparable harm, "a threshold requirement in granting temporary injunctive relief." *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 8 (D.D.C. 2009). To demonstrate irreparable harm, Burr must make a "clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (internal quotation marks omitted). The claimed harm must also be irreparable—that is, harm that "cannot be fully rectified by the final judgment after trial." *Id*. (internal quotation marks omitted). Upon review, the Court finds that Burr has failed to make the requisite showing.

Although unclear, it appears from the allegations of the Complaint that Burr learned that it was the victim of the Fraudulent Wire Instructions supplied by Defendants or their

co-conspirators as early as October 31, 2024, the date of the Real Estate Closing. Burr filed this action on March 6, 2025—and the TRO Motion the next day—with no explanation for the over four-month delay. From the nature of the wrongful conduct alleged—which included tricking Burr into sending money to a particular account—one would expect that the wrongdoer, realizing that the crime would soon be discovered, would plan to quickly withdraw the ill-gotten funds and abscond. Although it is possible that the Wired Funds or some thereof remains in the bank now, more than four months after the transfer, Burr has not offered any reason for believing that any money remains here. For that reason, Burr has not shown any more than a speculative or remote possibility that it would be harmed in the absence of a TRO and has not clearly shown that, without a TRO, further harm is imminent. *See FS Med. Supplies, LLC v. Tanner Pharma UK Ltd.*, No. 3:23-cv-000598-RJC-WCM, 2023 WL 6812565, at *3–4 (W.D.N.C. Oct. 16, 2023) (holding that, when several months had passed after the discovery of wrongdoing, the concern that assets would be transferred was remote and speculative and that the plaintiff failed to show that the harm it sought to avoid was imminent). Indeed, Burr's apparent failure to act with haste in seeking preliminary relief belies any claims of emergency. *See Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) ("Since an application for preliminary injunction is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required." (alteration in original) (internal quotation marks omitted)). The TRO Motion is therefore denied.[3]

---

[3] Because Burr fails to demonstrate imminent and irreparable harm, the Court does not address Burr's likelihood of success on the merits, the balance of equities, or the public interest. *See FS Med. Supplies, LLC*, 2023 WL 6812565, at *4.

**The Discovery Motion**

"The designation of a John Doe defendant is generally not favored in the federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff and the plaintiff is likely to be able to identify the defendant after further discovery." *Chidi Njoku v. Unknown Special Unit Staff*, No. 99-7644, 2000 WL 903896  (4th Cir. July 7, 2000) (unpublished table decision); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  "Service of process can pose a special dilemma for plaintiffs in cases like this in which the tortious activity occurred entirely on-line.  The dilemma arises because the defendant may have used a fictitious name and address in the commission of the tortious acts." *Columbia Ins. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999).  "As a general rule, discovery proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."  *Id.* (collecting cases).  "When a plaintiff seeks to learn the identities of unknown defendants through pre-service subpoenas under Rule 45 of the Federal Rules of Civil Procedure, he or she should be allowed to do so unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Patrick Collins, Inc. v. John Does 1–39*, No. 12-cv-00096-AW, 2012 WL 13013076, at *1 (D. Md. Jan. 11, 2012) (internal quotation marks omitted); *see also Taylor v. John Does 1–10*, No. 4:13-CV-218-F, 2014 WL 1870733, at *1 (E.D.N.C. May 8, 2014) ("[W]here a plaintiff sufficiently alleges that the defendants' conduct was unlawful and the plaintiff is likely to be able to

7

identify the defendants, the courts have allowed requests to compel production of anonymous individuals' identities.").

The Court "is not prepared to hold, at this early, *ex parte* stage, that it is 'clear' that 'the complaint would be dismissed.'" *Patrick Collins, Inc.*, 2012 WL 13013076, at *1. If there are clear reasons why it should be dismissed or why the discovery requests are otherwise improper, such reasons may be raised in a motion to quash a subpoena. *See id.* Nonetheless, the Court concludes that Burr's motion does not sufficiently identify the discovery Burr seeks. Burr "requests leave to conduct discovery to ascertain the identity of Defendants, and [discovery concerning] the disposition of [Burr's] funds which were transferred to the Truist 1857 Account and subsequent Recipient Accounts under false pretenses, including issuance of subpoenas *duces tecum* and subpoenas for depositions." [Doc. 5 at 3.] The Court requires that, to obtain the discovery sought, Burr "should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested." *Columbia Ins.*, 185 F.R.D. at 580. Burr should include "identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about [Defendants] that would make service of process possible." *Id.*

## **CONCLUSION**

Accordingly, in light of the above, Burr's motion for an ex parte TRO and preliminary injunction [Doc. 4] is DENIED and Burr's motion for leave to conduct pre-service discovery is DENIED without prejudice to refile within 14 days of the issuance of this Order.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

March 11, 2025
Columbia, South Carolina

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.