IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Burr & Associates, LLC, ) | Case No. 3:25-cv-01381-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| John Doe 1, John Doe 2, ) | |
| John Doe 3, John Doe 4, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on motions by Burr & Associates, LLC ("Burr") for discovery (the "Second Discovery Motion") and for reconsideration (the "Motion for Reconsideration") of a prior Order denying Burr's earlier motions for an ex parte temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure (the "TRO Motion") and for leave to conduct pre-service discovery (the "First Discovery Motion"). [Docs. 10; 11; *see* Doc. 9.]

**BACKGROUND**[1]

Burr is a law firm operating in South Carolina that has a business banking relationship with Truist Bank ("Truist") and maintains an account at Truist that it utilizes in connection with its law practice (the "Burr Account"). [Doc. 1 ¶¶ 1, 16–17.] In September and October 2024, Burr was assisting as the buyer's counsel with closing a transaction for the purchase of real estate located in Chapin, South Carolina (the "Real Estate Closing"). [*Id*. ¶ 18.] Sometime prior to the Real Estate Closing, which occurred on October 31, 2024, Defendants and their co-conspirators hacked into communications

---

[1] The Background summary is largely derived from the Complaint filed in this matter. [Doc. 1.]

among the parties to the Real Estate Closing through unknown means, posed as parties related to the Real Estate Closing, and transmitted to Burr false wire instructions (the "Fraudulent Wire Instructions") directing that Burr wire a mortgage paydown to a particular account ("the Truist 1857 Account").  [*Id*. ¶¶ 18–19.]  In reliance on the Fraudulent Wire Instructions, Burr wired the sum of $456,862.96 (the "Wired Funds") from the Burr Account to the Truist 1857 Account (the "Wire Transfer").  [*Id*. ¶ 20.]

The owners of the Truist 1857 Account and subsequent accounts to which the Wired Funds may have been transferred (the "Recipient Accounts") are unknown, but upon information and belief, they are persons operating or recruited by a fraudulent enterprise for the purpose of moving funds beyond the reach of Burr and of court process. [*Id*. ¶ 23.]  Because of the Fraudulent Wire Instructions, the Wired Funds were transferred from the Burr Account into the Truist 1857 Account and the Recipient Accounts to persons not affiliated with Burr or the Real Estate Closing.  [*Id*. ¶ 25.]

Considering the above alleged scheme by Defendants, Burr filed this action on March 6, 2025, asserting causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; for money had and received; fraud; civil conspiracy; and unjust enrichment/constructive trust.  [*Id*. ¶¶ 31–58.]  Burr seeks compensatory, nominal, treble, general, and punitive damages, and an award of costs and attorneys' fees.  [*Id*. ¶¶ 21, 62–63; *id*. at 13.]  Burr also seeks injunctive relief and disgorgement of funds wrongfully taken, received, and misappropriated by Defendants.[2] [*Id*. ¶¶ 59–61; *id.* at 13.]

---

[2] Truist was able to recover $140,137.24 of the Wired Funds.  [Doc. 1 ¶ 21.]

On March 7, 2025, Burr filed the TRO Motion and the First Discovery Motion. [Docs. 4; 5.]  In the TRO Motion, Burr requested a TRO freezing the Truist 1857 Account and subsequent Recipient Accounts and all of their proceeds, wherever located, since October 31, 2024, up to the amount of $316,725.68 on a temporary and preliminary, then permanent basis pursuant to Rule 65.  [Doc. 4 at 8.]  It also requested that the Court set a preliminary injunction hearing within 14 days of the entry of the TRO, enter a preliminary injunction through final judgment of this case or until further order of the Court, and grant such other and further relief as the Court deems just and proper.  [*Id.* at 10–11.]

In the First Discovery Motion, Burr "request[ed] leave to conduct discovery to ascertain the identity of Defendants, and [discovery concerning] the disposition of [Burr's] funds which were transferred to the Truist 1857 Account and subsequent Recipient Accounts under false pretenses, including issuance of subpoenas *duces tecum* and subpoenas for depositions."  [Doc. 5 at 3.]

On March 11, 2025, the Court issued an Order denying the TRO Motion and denying the First Discovery Motion without prejudice to refile.  [Doc. 9.]  As to the TRO Motion, the Court concluded that, with months having passed since the incident, Burr could not demonstrate that harm to it was imminent or more than a speculative or remote possibility in the absence of a grant of the TRO Motion.  [*Id.* at 5–6.]  The Court also concluded that the First Discovery Motion did not specifically describe the discovery that Burr sought.  [Doc. 9 at 8.]

On March 13, Burr again filed the Second Discovery Motion and also filed the Motion for Reconsideration.  [Docs. 10; 11.]  The Court considers these motions seriatim.

**DISCUSSION**

**The Motion for Reconsideration**

Burr purports to bring the Motion for Reconsideration under Rule 59(e) of the South Carolina Rules of Civil Procedure, but, with certain exceptions not applicable here, it is the Federal Rules of Civil Procedure that "govern the procedure in all civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1. Under the Federal Rules of Civil Procedure "[t]he Court considers the motion under Federal Rule of Civil Procedure 59(e) since it is a substantive motion for reconsideration of an appealable order filed within 28 days of entry of the challenged order." *Wallace v. Miller*, No. 09-cv-342-JPG, 2010 WL 4284915, at *1 (S.D. Ill. Oct. 21, 2010) (construing a motion to reconsider an order denying a motion for a temporary restraining order and a preliminary injunction); *see N.S. v. Hughes*, No. 1:20-cv-101-RCL, 2020 WL 4260739, at *1 (D.D.C. July 24, 2020) ("Rule 59(e) is the appropriate standard by which to assess a motion to reconsider a preliminary injunction, as a preliminary injunction is a directly appealable order."); *Coachella Music Festival, LLC v. Simms*, No. 2:17-cv-06059-RGK-GJS, 2017 WL 6888499, 2017 WL 6888499, at *2 (C.D. Cal. Dec. 13, 2017) ("[Rule] 59(e) governs a motion to reconsider a preliminary injunction, and [Rule] 54(b) governs a motion to vacate or dissolve a preliminary injunction.").[3] The Fourth Circuit has recognized only three grounds for granting a Rule 59(e) motion: "(1) to accommodate an intervening change in

---

[3] Some courts in analogous circumstances have construed the motion for reconsideration as a motion under Rule 54(b). *See, e.g.*, *Jenkins v. Haaland*, No. 2:21-cv-00385-RJS-DAO, 2021 WL 5565447, at *2 (D. Utah Nov. 29, 2021), *appeal dismissed*, 2022 WL 3041103 (10th Cir. Aug. 2, 2022). Even if the Court construed the motion here as brought under Rule 54(b) rather than Rule 59(e), the result would be the same, as Court is not persuaded that its denial of the TRO Motion was in error.

4

controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "[T]he rule permits a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Id.* (internal quotation marks omitted).

In the Motion for Reconsideration, Burr apparently seeks to establish the third ground, to correct a clear error of law or prevent manifest injustice. [Doc. 11 at 3–5.] However, Burr does not engage this Court's analysis set out in its prior Order or explain why that analysis is incorrect. Rather, Burr's argument essentially only points to another case that it considers factually analogous and notes that the district judge in that case granted the relief the plaintiffs sought. [*Id.* at 4–5.] Accordingly, because Burr has not demonstrated a ground sufficient for the Court to reconsider its prior Order, the Court denies Burr's Motion for Reconsideration.

**Burr's Second Discovery Motion**

"The designation of a John Doe defendant is generally not favored in the federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." *Chidi Njoku v. Unknown Special Unit Staff*, No. 99-7644, 2000 WL 903896 (4th Cir. July 7, 2000) (unpublished table decision). "Service of process can pose a special dilemma for plaintiffs in cases like this in which the tortious activity occurred entirely on-line. The dilemma arises because the defendant may have used a fictitious name and address in the commission of the tortious acts." *Columbia Ins. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). "As a general rule, discovery

5

proceedings take place only after the defendant has been served; however, in rare cases, courts have made exceptions, permitting limited discovery to ensue after filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Id.* (collecting cases). "When a plaintiff seeks to learn the identities of unknown defendants through pre-service subpoenas under Rule 45 of the Federal Rules of Civil Procedure, he or she should be allowed to do so unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Patrick Collins, Inc. v. John Does 1–39*, No. 12-cv-00096-AW, 2012 WL 13013076, at *1 (D. Md. Jan. 11, 2012) (internal quotation marks omitted); *see also Taylor v. John Does 1–10*, No. 4:13-CV-218-F, 2014 WL 1870733, at *1 (E.D.N.C. May 8, 2014) ("[W]here a plaintiff sufficiently alleges that the defendants' conduct was unlawful and the plaintiff is likely to be able to identify the defendants, the courts have allowed requests to compel production of anonymous individuals' identities.").

As the Court noted in its prior Order, the Court "is not prepared to hold, at this early, *ex parte* stage, that it is 'clear' that 'the complaint would be dismissed.'" [Doc. 9 at 8 (quoting *Patrick Collins, Inc.*, 2012 WL 13013076, at *1) (internal quotation marks omitted).] Nonetheless, the Court concluded in the prior Order that Burr's motion did not sufficiently identify the discovery Burr seeks. [*Id.*] This Court ruled that, to obtain the discovery sought, Burr "should file a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested" and "should include 'identification of a limited number of persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will

6

lead to identifying information about [Defendants] that would make service of process possible.'" [*Id.* (quoting *Columbia Ins.*, 185 F.R.D. at 580).]

In Burr's Second Discovery Motion, Burr has now done that. It explains that it "is seeking to reveal the identity of the account holder(s) through subpoenas to Truist Bank, and possibly depositions of Truist Corporate Designees, in the event that the subpoenas do not reveal the information sought." [Doc. 10 at 2–3.] Burr explains that it "seeks to establish the identity of the persons who own or owned the Truist 1857 Account and subsequent Recipient Accounts, who came into possession of the funds involved with the subject transactions, and who caused or aided and abetted the fraudulent transactions and theft of funds." [*Id.* at 3.] The Court therefore grants the Second Discovery Motion. *See Patrick Collins, Inc.*, 2012 WL 13013076, at *1.

## **CONCLUSION**

Accordingly, in light of the above, Burr's motion for reconsideration [Doc. 11] is DENIED and its motion for discovery [Doc. 10] is GRANTED.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

April 7, 2025
Columbia, South Carolina