IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Burr & Associates, LLC | ) | Case No. 3:25-cv-01381-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| John Doe 3; John Doe 4; | ) | |
| Tess Alexandria Craig; | ) | |
| Tess Drives Professional Detailing, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on an Amended Complaint of Burr & Associates, LLC ("Plaintiff"), alleging a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as well as several state law claims. [Doc. 15.] For the reasons stated herein, the Court directs Plaintiff to show cause why its RICO claim should not be dismissed.

## APPLICABLE LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion,

a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not

2

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief.[1] *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

A district court is authorized, under certain circumstances, to dismiss a claim sua sponte for failure to state a claim. *Robertson v. Anderson Mill Elem. Sch.*, 989 F.3d 282, 290–91 (4th Cir. 2021). Such dismissals are appropriate only if "the party whose complaint stands to be dismissed [is] afforded notice and an opportunity to amend the complaint or otherwise respond." *Id.* at 291 (internal quotation marks omitted).

## BACKGROUND

Plaintiff filed this action on March 6, 2025, and filed an Amended Complaint on May 15, 2025. [Docs. 1; 15.] The Amended Complaint alleges the following facts.

---

[1] "[E]ven after *Iqbal* and *Twombly*, a plaintiff may state a claim based 'upon information and belief,' especially if the facts are peculiarly within the defendant's knowledge and control, so long as an inference of culpability is plausible." *Dedrick v. Abilene Motor Express, Inc.*, No. 1:21CV00027, 2021 WL 5236817, at *6 (W.D. Va. Nov. 8, 2021); *see Wells v. Moore Cnty. Schs. Bd. of Educ.*, No. 1:23CV412, 2025 WL 1348491, at *6 (M.D.N.C. May 8, 2025).

Plaintiff is law firm in South Carolina, with its principal place of business in Lexington County.  [Doc. 15 ¶ 1.]  Defendant Tess Drives Professional Detailing, LLC ("TDPD") is a company organized under the laws of North Carolina.  [*Id.* ¶ 2.]  Defendant Tess Alexandria Craig is a citizen of North Carolina.  [*Id.* ¶ 3.]  At all relevant times, Plaintiff had a business banking relationship with Truist Bank and maintains an account at Truist Bank ("Plaintiff's Truist Account") in connection with its law practice.  [*Id.* ¶ 17.]

TDPD is the named owner of a bank account at Truist Bank with bank account number xxxxxx1857 (the "Truist 1857 Account").  [*Id.* ¶ 6.]  Craig is the beneficial owner of that account.  [*Id.* ¶ 7.]

In September and October 2024, Plaintiff was assisting as the buyer's counsel with closing a transaction for the purchase of real estate located in Chapin, South Carolina (the "Real Estate Closing").  [*Id.* ¶ 18.]  The transaction closed on October 31, 2024.  [*Id.*]  Prior to that date, Defendants and their co-conspirators hacked into communications among the parties to the Real Estate Closing through unknown means, posed as parties related to the Real Estate Closing, and transmitted to Plaintiff false wire instructions directing that Plaintiff wire a mortgage paydown to the Truist 1857 Account (the "Fraudulent Wire Instructions").  [*Id.* ¶ 19.]

In reliance on the Fraudulent Wire Instructions, Plaintiff wired from Plaintiff's Truist Account the sum of $456,862.96 to the Truist 1857 Account (the "Wire Transfer").  [*Id.* ¶ 20.]  The Truist 1857 Account is owned by TDPD, which is not a party to and does not have a legitimate business interest in the Real Estate Closing.  [*Id.* ¶ 22.]  Because of the Fraudulent Wire Instructions, the Wire Transfer was transferred from Plaintiff's Truist

Account into the Truist 1857 Account and other accounts, to persons not affiliated with Plaintiff or the Real Estate Closing. [*Id.* ¶ 24.]

Defendants—owners of the accounts that received the Wire Transfer—directed the fraudulent scheme that is the subject of this action and either acted with knowledge of the fraudulent nature of the fraud upon the parties to the Real Estate Closing or with reckless indifference to the improper actions they were taking or being asked to take as instrumentalities of the fraudulent scheme. [*Id.* ¶ 25.] Defendants accessed, used, transferred, converted, withdrew, and stole the funds that Plaintiff transferred to the Truist 1857. [*Id.* ¶ 28.] Defendants and their co-conspirators knew that the Wire Funds were proceeds of unlawful activities at the time they transferred and converted the funds. [*Id.* ¶ 31.] Truist Bank was able to recover $140,137.24, reducing the total amount remaining to be recovered to $316,725.68. [*Id.* ¶ 21.]

In its Amended Complaint, Plaintiff alleges a RICO cause of action as well as state law claims for money had and received, fraud, civil conspiracy, and unjust enrichment/constructive trust. [*Id.* ¶¶ 29–56.] Plaintiff seeks compensatory, nominal, treble, general, and punitive damages; injunctive relief and disgorgement; and attorneys' fees and costs. [*Id.* at 12; *see id.* ¶ 59.] The Amended Complaint alleges that the Court possesses both federal question jurisdiction—by virtue of the RICO claim—and diversity jurisdiction. [*Id.* at 14.]

After being served, neither TDPD nor Craig filed an answer or motion to dismiss or made any other appearance, and the Clerk entered default as to both. [Docs. 26; 37.] Plaintiff has moved for default judgment against both Craig and TDPD [Docs. 31; 39; *see* Doc. 34], and those motions are currently pending.

5

## DISCUSSION

As will be discussed, the Court concludes that Plaintiff has failed to adequately plead its RICO claim. Accordingly, the Court directs Plaintiff to show cause why the Court should not dismiss this claim. The Court will defer ruling on Plaintiff's motions for default judgment until after the Court has considered any further arguments from Plaintiff as to whether the RICO claim—the only claim that could potentially entitle Plaintiff to treble damages—can survive.

**The RICO Claim is Not Adequately Pled**

As is relevant here, RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Importantly, however, "RICO . . . does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *U.S. Airline Pilots Ass'n v. AWAPPA, LLC ("AWAPPA")*, 615 F.3d 312, 317 (4th Cir. 2010).

RICO allows "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]" to sue and recover treble damages and an award of attorneys' fees. 18 U.S.C. § 1964(c). To state a RICO claim under § 1962(c), a plaintiff must allege the following elements: "(1) the defendant's employment by or association with (2) an 'enterprise' (3) engaged in or affecting interstate commerce (4) the affairs of which the defendant conducts or participates in through a pattern of racketeering activity." *Dtex, LLC v. BBVA Bancomer, S.A.,* 405 F. Supp. 2d 639, 649 (D.S.C. 2005), *aff'd* 214

F. App'x 286 (4th Cir. 2007); *see United States v. Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) (en banc).

A RICO enterprise requires the existence of collaboration or agreement between the enterprise's members. *Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009). A RICO enterprise also "must be distinct from the persons alleged to have violated § 1962(c)." *Palmetto State Med. Ctr., Inc. v. Operation Lifeline,* 117 F.3d 142, 148 (4th Cir. 1997).

"RICO defines 'racketeering activity' in part as any act that is indictable under certain provisions of federal law, including the law prohibiting wire fraud." *Martin v. JTH Tax, Inc.*, No. 9:10-cv-03016-DCN, 2013 WL 1282224, at *4 (D.S.C. Mar. 27, 2013) (citing 18 U.S.C. § 1961(1)(B)). A "pattern of racketeering activity" requires at least two acts of racketeering activity committed within ten years of one another. 18 U.S.C. § 1961(5). It can be sufficient to "identify[] two or more predicate crimes within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 613 (2025) (internal quotation marks omitted). "[A] plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians,* 155 F.3d 500, 505 (4th Cir. 1998). "Continuity may be established by showing that 'predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Id.* (internal quotation marks omitted).

The Fourth Circuit described the continuity requirement in AWAPPA:

> RICO's continuity requirement—"centrally a temporal concept"—arises from Congress's concern with "long-term criminal conduct." [*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).] As such, it demonstrates Congress's desire to

7

limit RICO's application to "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Al-Abood ex rel. Al-Abood v. El-Shamari,* 217 F.3d 225, 238 (4th Cir. 2000) (internal quotation marks omitted); *see also Vemco, Inc. v. Camardella,* 23 F.3d 129, 133–34 (6th Cir. 1994).

The Supreme Court has explained that "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241. Closed-ended continuity exists when the "series of related predicates extend[s] over a substantial period of time." *Id.* at 242. [The plaintiff] does not contend that the factual allegations in any of its complaints, describing conduct spanning only a few weeks, satisfy the Supreme Court's standard for closed-ended continuity.

. . . . To allege open-ended continuity, a plaintiff must plead facts that demonstrate a "threat of continuity," i.e., facts that give rise to a reasonable expectation that the racketeering activity will "extend[ ] indefinitely into the future." *Id.* "Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case." *Id.*

A plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a "built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity." *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 549 (4th Cir. 2001); *see also* [*Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)] (finding no continuity because "[d]efendants' actions were narrowly directed towards a single fraudulent goal"); *Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 186 (2d Cir. 2008) (holding "a serious, but discrete and relatively short-lived scheme . . . insufficient to establish open-ended continuity" (internal quotation marks omitted)); [*Gamboa v. Velez*, 457 F.3d 703*,* 708 (7th Cir. 2006)] (holding that a "one-time endeavor to wreak havoc upon all matters linked to a single murder investigation" had a "built-in end point" and thus lacked continuity); *Efron v. Embassy Suites (P.R.), Inc.,* 223 F.3d 12, 20 (1st Cir. 2000) ("Had Efron argued that the defendants planned to operate the hotel indefinitely at a paper loss as a means of perpetually defrauding him, rather than asserting the specific objective of squeezing him out of the

8

> Partnership, he would have a stronger argument for an open-ended RICO pattern. His pleadings and argument, however, depict an undertaking with a soon-to-be reached endpoint.").

*AWAPPA*, 615 F.3d at 318–19 (some alterations in original) (parallel citations omitted).

In this case, Plaintiff, at a minimum, has not adequately pled either the existence of an enterprise or continuity.  Plaintiff's allegations of an enterprise appear to consist of simply using the word "enterprise" in a conclusory manner on two occasions.  [Doc. 15 ¶¶ 9, 31.]  Indeed, although Plaintiff alleges actions by "Defendants and their co-conspirators" [*e.g., id.* ¶ 19], they do not allege any specific facts indicating that more than one person was responsible for the fraud, let alone plausible allegations of collaboration or agreement between different members of an enterprise.

As for continuity, the conduct Plaintiff alleges is of short duration, beginning when Defendants and their co-conspirators, "[p]rior to October 31, 2024,. . . , hacked into communications among the parties to the Real Estate Closing through unknown means, posed as parties related to the Real Estate Closing, and transmitted to Plaintiff false wire instructions . . . directing that Plaintiff wire a mortgage paydown to the Truist 1857 Account" and then subsequently "receiv[ed], negotiat[ed], or dispos[ed] of the funds" sent to the account.  [*Id.* ¶¶ 19, 26.]  With the Amended Complaint failing to allege events that occurred over a substantial period of time, it does not adequately allege closed-ended continuity.  *See H.J. Inc.*, 492 U.S. at 242.  And with Plaintiff not having alleged "facts that give rise to a reasonable expectation that the racketeering activity will extend indefinitely into the future," it also has not alleged open-ended continuity.  *AWAPPA*, 615 F.3d at 318 (cleaned up).  Rather, the facts allege describe "actions . . . narrowly directed toward[] a single fraudulent goal," *Menasco*, 886 F.2d at 684, and actions with "a built-in ending

9

point," such that they do "not present the necessary threat of long-term, continued criminal activity," *Parker*, 247 F.3d at 549, needed to establish a § 1962(c) violation.

For both of these reasons, the Court concludes that Plaintiff fails to state a claim under RICO. Because the Court has raised this issue sua sponte, the Court will give Plaintiff an opportunity to respond. See *Robertson*, 989 F.3d at 291. Accordingly, the Court directs Plaintiff to show cause by August 3, 2026, why its RICO claim should not be dismissed for failure to state a claim.

## **CONCLUSION**

In sum, for the reasons explained, Plaintiff is directed to show cause by August 3, 2026, why Plaintiff's RICO claim should not be dismissed for the reasons discussed.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

July 20, 2026
Greenville, South Carolina

10