IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Burr & Associates, LLC, | ) | Case No. 3:25-cv-01381-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| John Doe 3; John Doe 4; | ) | |
| Tess Alexandria Craig; | ) | |
| Tess Drives Professional Detailing, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| ________________________________ | ) | |

This matter is before the Court on motions for default judgment by Burr & Associates, LLC ("Plaintiff") and an Order to show cause issued by the Court. [Docs. 31; 39; 42; *see* Doc. 49.] For the reasons stated herein, the Court grants the motions.

## BACKGROUND

Plaintiff filed this action on March 6, 2025, and filed an Amended Complaint on May 15, 2025. [Docs. 1; 15.] The Amended Complaint alleges the following facts.

Plaintiff is law firm in South Carolina, with its principal place of business in Lexington County. [Doc. 15 ¶ 1.] Defendant Tess Drives Professional Detailing, LLC ("TDPD") is a company organized under the laws of North Carolina. [*Id.* ¶ 2.] Defendant Tess Alexandria Craig is a citizen of North Carolina. [*Id.* ¶ 3.] At all relevant times, Plaintiff has had a business banking relationship with Truist Bank and has maintained an account at Truist Bank ("Plaintiff's Truist Account") in connection with its law practice. [*Id.* ¶ 17.]

TDPD is the named owner of a bank account at Truist Bank with bank account number xxxxxx1857 (the "Truist 1857 Account"). [*Id.* ¶ 6.] Craig is the beneficial owner of the Truist 1857 Account. [*Id.* ¶ 7.]

In September and October 2024, Plaintiff was assisting as the buyer's counsel with closing a transaction for the purchase of real estate located in Chapin, South Carolina (the "Real Estate Closing"). [*Id.* ¶ 18.] The transaction closed on October 31, 2024. [*Id.*] Prior to that date, Defendants and their co-conspirators hacked into communications among the parties to the Real Estate Closing through unknown means, posed as parties related to the Real Estate Closing, and transmitted to Plaintiff false wire instructions directing that Plaintiff wire a mortgage paydown to the Truist 1857 Account (the "Fraudulent Wire Instructions"). [*Id.* ¶ 19.]

In reliance on the Fraudulent Wire Instructions, Plaintiff wired from Plaintiff's Truist Account the sum of $456,862.96 (the "Wire Funds") to the Truist 1857 Account (the "Wire Transfer"). [*Id.* ¶ 20.] TDPD is not a party to and does not have a legitimate business interest in the Real Estate Closing. [*Id.* ¶ 22.] Because of the Fraudulent Wire Instructions, the Wire Transfer was transferred from Plaintiff's Truist Account into the Truist 1857 Account and other accounts, to persons not affiliated with Plaintiff or the Real Estate Closing. [*Id.* ¶ 24.]

Defendants—owners of the accounts that received the Wire Transfer—directed the fraudulent scheme that is the subject of this action and either acted with knowledge of the fraudulent nature of the fraud upon the parties to the Real Estate Closing or with reckless indifference to the improper actions they were taking or being asked to take as instrumentalities of the fraudulent scheme. [*Id.* ¶ 25.] Defendants accessed, used,

transferred, converted, withdrew, and stole the funds that Plaintiff transferred to the Truist 1857 Account. [*Id.* ¶ 28.] Defendants and their co-conspirators knew that the Wire Funds were proceeds of unlawful activities at the time they transferred and converted the funds. [*Id.* ¶ 31.] Truist Bank was able to recover $140,137.24, reducing the total amount remaining to be recovered to $316,725.68. [*Id.* ¶ 21.]

In its Amended Complaint, Plaintiff alleges a claim under the Racketeer Influenced Corrupt Organizations Act ("RICO") as well as state law claims for money had and received, fraud, civil conspiracy, and unjust enrichment/constructive trust. [*Id.* ¶¶ 29–56.] Plaintiff seeks compensatory, nominal, treble, general, and punitive damages; injunctive relief and disgorgement; and attorneys' fees and costs. [*Id.* at 12; *see id.* ¶ 59.] The Amended Complaint alleges that the Court possesses both federal question jurisdiction—by virtue of the RICO claim—and diversity jurisdiction. [*Id.* ¶ 14.]

After being served, neither TDPD nor Craig filed an answer or motion to dismiss or made any other appearance, and the Clerk entered default as to both. [Docs. 26; 37.] Plaintiff has moved for default judgment against both Craig and TDPD [Docs. 31; 39; *see* Doc. 34], and those motions are currently pending.

On July 20, 2026, the Court issued an Opinion and Order directing Plaintiff to show cause why Plaintiff's RICO claim should not be dismissed for failure to state a claim. [Doc. 42.] In its response, Plaintiff offered no argument that the Amended Complaint stated a RICO claim, but he agreed to dismiss the claim without prejudice. [Doc. 49.]

## APPLICABLE LAW

**Default Judgment Standard**

Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment." *United States v. Clark*, No. 3:17-cv-03440-JMC, 2019 WL 1122933, at *1 (D.S.C. Mar. 12, 2019) (internal quotation marks omitted).

In considering a motion for default judgment, the court accepts as true all well pleaded factual allegations in the complaint not relating to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). The court then must "determine whether the well-pleaded allegations in the operative complaint support the relief sought." *Mey v. Phillips*, 71 F.4th 203, 223 (4th Cir. 2023) (cleaned up). As a result, before entering default judgment, the court must "evaluate the plaintiff's complaint against the standards of Fed. R. Civ. P. 12(b)(6) to ensure that the complaint properly states a claim." *Rollins Ranches, LLC v. Watson*, No. 0:18-cv-03278-SAL, 2021 WL 5355650, at *3 (D.S.C. Nov. 17, 2021) (internal quotation marks omitted).

**Rule 12(b)(6) Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. The court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of Rule 12(b)(6), a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief.[1] *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

### Liability

Under South Carolina law,[2] "[t]o establish a cause of action for fraud, the following elements must be proven by clear, cogent, and convincing evidence: (1) a representation of fact; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the

[1] "[E]ven after *Iqbal* and *Twombly*, a plaintiff may state a claim based 'upon information and belief,' especially if the facts are peculiarly within the defendant's knowledge and control, so long as an inference of culpability is plausible." *Dedrick v. Abilene Motor Express, Inc.*, No. 1:21CV00027, 2021 WL 5236817, at *6 (W.D. Va. Nov. 8, 2021); *see Wells v. Moore Cnty. Schs. Bd. of Educ.*, No. 1:23CV412, 2025 WL 1348491, at *6 (M.D.N.C. May 8, 2025).

[2] "A federal court sitting in diversity or supplemental jurisdiction generally applies the relevant substantive law of the state in which the court sits." *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1036 n.5 (D.S.C. 2021).

hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Schnellmann v. Roettger*, 645 S.E.2d 239, 241 (S.C. 2007). The Court concludes that Plaintiff's well pled allegations are sufficient to support a default judgment on its fraud cause of action.

Here, Plaintiff alleges that Defendants and their co-conspirators misrepresented their identities in tricking Plaintiff into complying with the Fraudulent Wire Instructions. [Doc. 15 ¶ 19.] Accordingly, Plaintiff sufficiently alleges Defendants represented that they were parties related to the Real Estate Closing; that the representation was false; that it was material; that Defendants knew it was false; that they intended that Plaintiff would act on it; that Plaintiff was not aware that it was false; that Plaintiff relied on it by wiring the money; that Plaintiff had a right to rely on the representation; and that Plaintiff was proximately injured by the misrepresentation by losing the sum of $456,862.96, only $140,137.24 of which has been recovered. [*Id.* ¶¶ 20–21.] Accordingly, the Court concludes Plaintiff is entitled to default judgment against Craig and TDPD as to its fraud claim.[3]

**Damages**

The Court notes that although a court may hold a hearing to determine the amount of damages to award in a default judgment, *see* Fed. R. Civ. P. 55(b)(2)(B), "in some

[3] Because the Court concludes that Plaintiff is entitled to default judgment as to this cause of action, it need not analyze Plaintiff's other claims, which concern the same transfer of funds. *See United States v. Health Screening Servs., LLC*, No. 0:18-cv-02341-JDA, 2025 WL 4756960, at *11 (D.S.C. Oct. 15, 2025), *reconsideration denied sub nom. United States ex rel. Grant v. LabSolutions*, No. 0:18-cv-02341-JDA, 2026 WL 821801 (D.S.C. Mar. 24, 2026) (analyzing only one of the relators' causes of action when that was sufficient to establish liability and the other causes of action were based on the same alleged conduct).

circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing." *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998); *see Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (finding that the court need not conduct an evidentiary hearing to determine damages and "may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum"). In this case, the Amended Complaint makes clear that the amount lost was a sum certain, $316,725.68. [Doc. 15 ¶¶ 20–21.] The Court therefore concludes that no hearing is needed and Plaintiff is entitled to $316,725.68 in compensatory damages.

The Court also finds that holding a hearing would serve no purpose as to Plaintiff's entitlement to punitive damages. Punitive damages are intended "to punish the wrongdoer and deter the wrongdoer and others from engaging in similar reckless, willful, wanton, or malicious conduct in the future." *Wimberly v. Barr*, 597 S.E.2d 853, 858 (S.C. Ct. App. 2004). "To receive an award of punitive damages, a plaintiff must present clear and convincing evidence that the defendant's conduct was willful, wanton, or in reckless disregard of the plaintiff's rights." *Kennedy v. Richland Cnty. Sch. Dist. Two*, 833 S.E.2d 414, 426 (S.C. Ct. App. 2019). "South Carolina courts have most often upheld verdicts on the lower end of the single-digit [ratio] spectrum, but will deviate from this standard when a case involves particularly egregious conduct." *Id.* at 430.

Here, the factual allegations in the Amended Complaint, taken as true, clearly establish that Defendants' conduct was willful, wanton, and malicious. The Court determines that an award of punitive damages in the amount of Plaintiff's compensatory

damages, $316,725.68, would be appropriate to punish Defendants for their conduct and deter others from committing similar offenses.[4]

**The Remaining Doe Defendants**

Finally, the Court notes that two Doe Defendants, John Doe 3 and John Doe 4, remain in the case. The Court orders Plaintiff to show cause why these two Defendants should not be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure for lack of timely service.

## CONCLUSION

In sum, for the reasons explained, Plaintiff's motions for default judgment [Docs. 31; 39] are GRANTED as to Craig's and TDPD's liability on Plaintiff's claims for money had and received, fraud, civil conspiracy, and unjust enrichment/constructive trust, and the Court enters judgment against them jointly and severally in the amount of $633,451.36, composed of compensatory damages of $316,725.68 and punitive damages of $316,725.68. Plaintiff's RICO claim is DISMISSED with prejudice. Finally, Plaintiff is ordered to show cause by November 6, 2026, why Defendants John Doe 3 and John Doe 4 should not be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure for lack of timely service.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

October 28, 2026
Columbia, South Carolina

---

[4] Plaintiff's RICO claim is dismissed with prejudice for the reasons discussed in this Court's Opinion and Order issued July 20, 2026. [Doc. 42.]